IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DERRICK HOBSON                                                              PLAINTIFF

v.                            Civil No. 05-6013

CAPTAIN STEED, GARLAND
COUNTY DETENTION CENTER                                                     DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Derrick Hobson, a former inmate of the Garland County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Hobson contends his constitutional rights were violated when he was not promptly released from incarceration after the dismissal of the criminal charges against him.

On June 17, 2005, defendant filed a motion for summary judgment (Doc. 10). By order entered on July 28, 2005 (Doc. 14), Hobson was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On August 5, 2005, plaintiff's response to the court's questionnaire (Doc. 16) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### I. BACKGROUND

Captain Mel Steed is the supervisor in charge of the Garland County Detention Center (GCDC). *Deft's Ex*. 1 at ¶ 3. Steed maintains that Garland County has a policy in effect that

-1-

requires all persons who are detained to be released immediately upon receipt of notification from a judicial officer that the detention should be terminated. *Id.* at ¶ 4.

Steed asserts that any person detained in the detention facility who can be released either by direction of the court or by citation is released promptly. *Deft's Ex.* 1 at ¶ 5. Steed indicates it is the policy of Garland County to strictly comply with all orders of Circuit Judges and District Judges in connection with the release of inmates. *Id.* at ¶ 6. In the event a Circuit Judge or a District Judge orders that an inmate be released, he is to be released promptly. *Id.* Steed asserts that upon receipt of a written order from a Circuit Judge or District Judge concerning the disposition of charges, the Garland County policy requires the order to be noted on the booking card and the inmate to be released promptly. *Id.* at ¶ 7.

On June 26, 2004, Hobson was arrested by the Hot Springs Police Department and charged with theft by receiving over $2,500. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 6. On January 11, 2005, the Honorable Tom Smitherman entered an order remanding the charge of unauthorized use of a vehicle to district court. *Id.* at ¶ 7(A).

According to Hobson, the unauthorized use of a vehicle charge was related to the theft by receiving charge. *Resp.* at ¶ 7(B). Specifically, he states:

> I bought a vehicle in which I was given a Bill of Sale. The police said the vehicle was reported stolen and charged me with theft over $2500. After sitting in jail 7 months, Judge Smitherman saw I abided by the law in purchasing the vehicle. he remanded the case to District Court as Unauthorized Use. I continued to plead my innocence and was ultimatly (sic) found so. Long overdue, you can see why I wanted my freedom returned to me promptly.

*Id.*

AO72A
(Rev. 8/82)

On January 14, 2005, the prosecuting attorney's office filed with the District Court of Garland County, Arkansas, a motion to nolle prosequi. *Resp.* at ¶ 8. On January 14, 2005, an order was entered by the District Judge granting the motion to nolle pros the unauthorized use of a vehicle charge. *Id.* at ¶ 9.

The order dismissing the charge directed the clerk to provide a copy of the order of dismissal to the Sheriff of Garland County. *Resp.* at ¶ 10. At approximately 11:40 a.m. on January 14, 2005, the order was faxed from the Garland County District Court to the GCDC. *Id.* at ¶ 11.

Although Captain Steed asserts by affidavit that this order was never brought to his attention, *deft's ex.* 1 at ¶ 15, Hobson disagrees asserting he personally notified Steed, *resp.* at ¶ 12. Hobson maintains he also brought it to Steed's attention through contact with subordinate officers and grievances. *Id.*

According to Hobson, he received a copy that same day. *Resp.* at ¶ 8. He indicates he finds it difficult to believe he received it before the supervisor would be notified. *Id.* Hobson states he made several copies of the order and showed officers and sent it twice to Steed. *Id.* at ¶ 10.

After not being released, Hobson states that when he was called to the nurse's office, he passed Steed's office and notified him that the criminal charge had been dismissed. *Resp.* at ¶ 13 & 19. Hobson indicates Steed promised to get back to Hobson. *Id.* at ¶ 13. Since he knew Steed did not work the weekends and it was only an hour or so until shift change, Hobson states he became more persistent. *Id.*

AO72A
(Rev. 8/82)

Hobson maintains that he was told by Deputy Grinness, per Steed, to not send any more grievances and if Hobson caused any problems he would be locked down. *Resp.* at ¶ 10 & ¶ 13. However, Hobson asserts he continued to write grievances, following the rules in the handbook, and through his persistence was eventually released. *Id.* at ¶ 10 & ¶ 14. Hobson also states Deputy Dodge assisted in getting him released by taking Hobson's papers to the sargent at the time. *Id.* at ¶ 15.

Hobson's booking card reflects he was scheduled for court on January 20, 2005, at 9:00 a.m. to be arraigned on the municipal charge of unauthorized use of a vehicle. *Resp.* at ¶ 18. Hobson notes that the order was not recorded on his booking card and Steed never got back to Hobson even after being told of the dismissal of the criminal charges. *Id.* at ¶ 5. Hobson remained in custody until January 17, 2005. *Id.* at ¶ 20.

On paper, Hobson agrees Garland County has no policy of detaining individuals after an order has been entered dismissing their criminal charges; However, he contends Steed and his subordinates "exercised a practice of continuing to detain" him. *Id.* at ¶ 22. Hobson maintains if the Garland County policy called for him to be released promptly upon receipt of the order of nolle prosequi, he should have been released on January 14, 2005, the day the order was received. *Resp.* at ¶ 21. He maintains if the policy is as stated by Steed it is not effective. *Id.* at ¶ 2 & ¶ 21. As this happened to him without anyone being disciplined, Hobson questions what is to stop it from happening again. *Id.* at ¶ 21.

Hobson believes Steed deliberately failed to release him. *Resp.* at ¶ 16. *See also Resp.* at ¶ 23. Hobson asserts that soon after he filed his first case *Hobson v. Steed,* civil no. 04-6148, filed November 15, 2004, he had problems receiving mail on time, getting a copy of his file, and

AO72A
(Rev. 8/82)

getting anything accomplished at Garland County. *Id.* at ¶ 16. Hobson states he always wrote grievances to Steed. *Id.* Hobson indicates he verbally expressed his problems whenever he came in contact with Steed. *Id.* Hobson indicates Steed would reply: "I am the head of this facility. I know what I am doing." *Id.* If this is true, Hobson states Steed also knew what he was doing when he detained Hobson against his rights. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

AO72A
(Rev. 8/82)

### III. DISCUSSION

Defendant maintains he is entitled to summary judgment. He contends the continued detention of Hobson until the Monday following the Friday dismissal of the criminal charge against him was regrettable but the result of negligence or inattentiveness. Defendant states he regrets the event occurred; However, he asserts the continued detention was not the result of any policy, practice, or custom of Garland County. Had the policy been complied with, defendant maintains Hobson would have been promptly released. While someone made a mistake, defendant maintains it was not him nor was the mistake made pursuant to a custom or policy of the county.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). "[A] public official is liable under § 1983 only 'if he causes the plaintiff to be subjected to deprivation of his constitutional rights.'" *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)(citation omitted).

The undisputed facts show that the charges against Hobson were dismissed on January 14, 2005, and the order of dismissal was faxed to the GCDC at 11:40 a.m. that day. It is also undisputed that Hobson was not released until January 17, 2005.

The question here is whether Hobson's continued detention after the criminal charges against him were dismissed violated his constitutional rights. *Baker*, 443 U. S. at 142. "Claims alleging the excessive detention of one who has established the right to be released are typically

AO72A
(Rev. 8/82)

analyzed under the Due Process Clause." *Golberg v. Hennepin County*, 417 F.3d 808, (8th Cir. 2005).

In *Golberg*, the Eighth Circuit said its prior opinions dealing with the "plaintiff's liberty interest in a timely release . . . suggest[ed] that the right to release from initially lawful detention is based upon the substantive component of the Due Process Clause, rather than the [reasonableness standard of the] Fourth Amendment. But whatever the federal constitutional right or rights at issue[,]" the Eighth Circuit stated it cases stood for the proposition that the plaintiff "must show [the defendant] was deliberately indifferent to that right to avoid summary judgment dismissing [his] § 1983 claim." *Golberg*, 417 F.3d at 811. If the right at issue was substantive due process, a question the *Golberg* court felt unnecessary to resolve on the case before it, the court noted the plaintiff "must also satisfy the demanding 'shocks-the-conscience' standard for substantive due process liability." *Golberg*, 417 F.3d at 811 at n. 3.

In *Golberg*, the plaintiff, Alexandra Golberg, appeared before a Minnesota state court judge in response to a felony fraud complaint. *Golberg*, 417 F.3d at 810. The criminal proceeding was continued but the judge ordered her to be booked into the Hennepin County Adult Detention Center before her release. *Id*. When she was being booked, it was discovered she had two outstanding warrants that required her to post bail before release. *Id*. Golberg remained in custody at the detention center for thirty-two hours. *Id*. Ten hours of this time occurred after her father had posted the required bail. *Id*.

Golberg sued Hennepin County and Sheriff Patrick McGowan. *Golberg*, 417 F.3d at 810. The district court granted summary judgment in the defendants' favor. *Id*. The Eighth Circuit affirmed. *Id*. In affirming, the court noted Sheriff McGowan and his staff did not fail to

implement a court-ordered release. *Id.* at 811. It noted she had failed to establish who at the sheriff's office was responsible for permitting her to arrange for bail, who received the bail, determined its adequacy, or released her. *Id.* The court stated she had failed to allege any member of the detention center staff "was deliberately indifferent to her right to be released after posting bail." *Id.* at 812. The court stated that Sheriff McGowan had no personal involvement in her booking and subsequent detention. *Id.*

It concluded that the record established that the "County's failure to process Golberg more promptly was mere negligence and therefore cannot satisfy the standard of criminal recklessness needed to prove that Sheriff McGowan (or any other [detention center] employee) was deliberately indifferent to Golberg's constitutional rights." *Id.* The court also stated her claim failed because "she presented no evidence that the administrative procedures adopted by the County violated federal law on their face[,] or were intended to deprive detainees of their constitutional rights[,]" or that County "action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* (citation omitted).

In *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004), after partially serving a term of imprisonment, Daryl Davis' conviction was reversed and he acquired pre-trial detainee status. *Id.* at 706. Davis was brought before a judge on April 22, 1999, and entered an *Alford* plea. *Id.* The judge imposed a one year sentence with credit for time served. *Id.* As Davis had already served approximately one and one-half years, and there were no warrants or holds on him, the judge ordered him released immediately. *Id.* at 706-707.

Despite the judge's order, county officials took Davis back to jail to await transfer back to the Missouri state correctional facility, Fulton. *Davis*, 375 F.3d at 707. Davis remained at the

-8-

county jail for four days and then was transported back to Fulton. Fulton was not provided with a copy of Davis' judgment and sentence order although Davis personally had a copy. *Id.* at 707.

"Davis repeatedly protested his continued incarceration but was ignored, met by indifference, or admonished for refusing to accept responsibility for his crime." *Davis*, 375 F.3d at 708. Davis was not released until fifty-seven days after he had been ordered released. *Id.* at 709. The court noted it had "recognized a protected liberty interest in being free from wrongful, prolonged incarceration." *Davis*, 375 F.3d at 712.

The Eighth Circuit referred to its earlier case of *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001). In *Young,* the plaintiff was arrested on a Saturday afternoon when a warrant check showed she was wanted for failing to comply with the conditions of her probation. *Young*, 249 F.3d at 732. The plaintiff's sister-in-law, however, was the individual who was wanted and had used the plaintiff's name as an alias. *Id.*

It was not until the plaintiff was at the county jail that the arresting officer discovered the mistake. *Young*, 249 F.3d at 732. When the arresting officer attempted to rectify the situation, his superiors decided a judge would have to resolve the issue at a probable cause hearing on Monday. *Id.* At the hearing, the judge ordered her released. *Id.*

Instead of releasing her, county officials put her in a holding cell for thirty minutes and then chained her to other prisoners, transported her back to the jail, strip searched her, and then released her. *Young*, 249 F.3d at 732-33. The case went to a jury trial and the jury returned a verdict in Young's favor for two separate periods of incarceration. *Id.* at 733. The first period of incarceration was the thirty minutes she was detained in a holding cell after the judge ordered

her released. *Id.* The second period of incarceration was the time she was sent back to the jail and strip searched. *Id.*

The Eighth Circuit upheld the jury verdicts. In doing so, it stated:

> The liberty of the individual is at stake here. A citizen had been arrested, erroneously as it turned out, and a court had ordered her released. The court's order had not been followed. Instead, a process of administrative foot-dragging took place, characterized by gross indignities.

*Young*, 249 F.3d at 736.

In *Davis*, the Eighth Circuit stated it had held in *Young* "that even a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment." *Davis*, 375 F.3d at 713. It also noted that in *Slone v. Herman*, 983 F.2d 107 (8th Cir. 1993), it had held that once:

> Judge Ely's order suspending Slone's sentence became final and nonappealable, the state lost its lawful authority to hold Slone. Therefore, any continued detention unlawfully deprived Slone of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment. Moreover, contrary to defendants' misplaced assertions, Slone's liberty interest was clearly established because it was based on a final and nonappealable court order. Whether or not defendants agreed with the order or thought that it was lawful does not diminish Slone's liberty interest or make his liberty interest less clear.

*Id.* at 110 (citations omitted).

In *Davis*, the defendants argued that the case was about whether or not they had a duty to investigate Davis' claim of wrongful incarceration. *Davis*, 375 F.3d at 714. The Eighth Circuit held that even if they accepted the defendants' position, that many circuits had recognized the necessity of investigation under certain circumstances. *Id.* at 716. The court noted that the Third Circuit in *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993), in the context of an Eighth

-10-

amendment prolonged incarceration claim, stated that "'[d]eliberate indifference has been demonstrated . . . where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.'" *Davis*, 375 F.3d at 716 (*quoting Moore*, 986 F.2d at 686). The *Davis* court continued by stating:

> In any event, whatever haziness obscures the exact contours of a duty to investigate burns off once the authorities *know* that they have no basis for detention. Unlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, he is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also *the duty to effect his timely release.*

*Davis*, 375 F.3d at 716.

It also noted that Davis' case was not that "he had a constitutionally protected interest in the defendants' investigation of his claim that he was entitled to release." *Davis*, 375 F.3d at 717. Instead, his claim was that "his prolonged incarceration after being ordered released violated his right to liberty, which is protected by the Fourteenth Amendment's guarantee of due process of law. The defendants' failure to investigate pertains not to the protected interest alleged by Davis but to their state of mind." *Id.*

The Eighth Circuit held that Davis would have to prove "the defendants were deliberately indifferent to his plight in order to prevail on his Fourteenth Amendment claim." *Davis*, 375 F.3d at 718. Proof would include "evidence of the duration of Davis's wrongful incarceration and the nature and frequency of his protests." *Id.* Additionally, it noted Davis would attempt to demonstrate that "instead of making any inquiries, the defendants either ignored Davis or reprimanded him for his 'criminal thinking.'" *Id.* at 719. *See also Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004)(Issues of fact as to whether implementation or application of county policy

resulting in plaintiffs being detained for periods ranging from twenty-six to twenty-nine hours after the court had authorized their release from jail was unreasonable under the circumstances and amounted to deliberate indifference to the detainees' constitutional rights).

In this case, we believe genuine issues of fact preclude entry of summary judgment in favor of Steed. As noted above, the undisputed facts show that the order dismissing the criminal charges against Hobson was faxed to the detention center on the morning of Friday, January 14, 2005. The undisputed facts also establish Hobson was not released until Monday, January 17, 2005.

If these two facts were the only ones that supported Hobson's claim against Steed, we would have little difficulty in concluding there were no genuine issues of material fact as to whether Steed acted with deliberate indifference. Negligence, whether gross negligence or not, cannot form the basis of a claim under § 1983.

Defendant offers the court his own affidavit in which he acknowledges the detention facility received the order by fax shortly after it was signed on January 14th. *Deft's Ex.* 1 at ¶ 13. He then merely states the order was not brought to his attention and for some unknown reason was never brought to the attention of the Sargent in charge; Nor, according to Steed, was it made known to detention facility personnel that Hobson was to be released immediately. *Id.* at ¶ 14 & ¶ 15. Defendant offers no explanation of how faxes from the court are normally processed, where the fax machine is located, whether the fax was reviewed the day received or not until the following Monday, etc. Defendant also asserts that he had no contact with Hobson concerning his continued detention following receipt of the order nol prossing the charges. *Id.* at ¶ 7 & ¶ 8.

In contrast, Hobson has asserted, under penalty of perjury, the following: he repeatedly brought the dismissal of the charges to the attention of jail personnel; he filed multiple grievances; he personally informed Steed on Friday, January 14th, of the dismissal of the charges; Steed promised to look into the dismissal of the charges; while the adopted policy regarding the process of release orders may on its face appear constitutional, the policy was not applied or implemented in a reasonable manner in his case; and that Hobson was threatened with lock-down if he continued to file grievances or protest his incarceration.

At the summary judgment stage, we "must view the facts and inferences in the light most favorable to the party opposing summary judgment." *Craighead v. Lee*, 399 F.3d 954, 960 (8th Cir. 2005). We believe Hobson has met his burden of identifying specific facts creating a triable controversy. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). Whether the conduct described by Hobson occurred and whether the conduct constitutes deliberate indifference, constitute issues of fact.

### IV. CONCLUSION

I therefore recommend that defendant's motion for summary judgment be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of October 2005.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

-13-